After the memorandum of October 6th, instant, had been forwarded to counsel, a re-argument was asked on two points, viz.: (1) Whether, under article 7 of section 8 of the Corporation act, the power to file an amended certificate in the form therein set forth is in conflict with the Corporation act? (2) On the question of reasonableness, and the power of the court to determine what was reasonable or unreasonable.
1. The seventh article of section 8 is as follows:
"VII. The certificate of incorporation may also contain any provision which the incorporators may choose to insert, for the regulation of the business and for the conduct of the affairs of the corporation, and any provision creating, defining, limiting and regulating the powers of the corporation, the directors and the stockholders, or any class or classes of stockholders;provided, such provision be not inconsistent with this act."
This section was construed in the case of Audenried v. EastCoast Milling Co., 68 N.J. Eq. 450. In that case it appeared that the certificate of incorporation provided that any resolution in writing, signed by all the members of the board of directors, should constitute the action of the board as fully as if the same was passed in opening meeting, and it was sought to sustain this grant of power under the seventh article of section 8 above set forth. Vice-Chancellor Bergen (at p. 467) said: "If the power to legislate as these incorporators have legislated exists, it must be found in the expression `any provision creating, defining, limiting and regulating the powers' of directors." After analyzing this paragraph, *Page 92 
he said: "The method of exercising the power created must conform to settled legal principles, unless it be otherwise distinctly authorized by the legislative act. No such express authority is conferred by this act, and it ought not to be inferred from ambiguous expressions;" and he held the amendment invalid.
At the time our Corporation act was passed there resided in the stockholders the power to remove directors for cause, and after a hearing, but not arbitrarily, which power the stockholders might delegate to the directors. This being an important feature of the law at the time of the adoption of our Corporation act, to hold that the ambiguous language in the seventh paragraph gave power to the stockholders to amend the certificate to arbitrarily create a disqualification and authorize the removal of a director, would be doing violence to the legislative intent.
2. The next question to be considered is, Are the amendments arbitrary? And this question must be determined by their reasonableness. This has been dealt with in the first memorandum. On the re-argument, in view of the memorandum of the court, counsel called the attention of the court to the effect of the words "directly * * * interested in any business which competes,"c., as tending to show the propriety of the disqualification, and pointed out that an employe or agent may be so connected with a rival concern that it becomes his duty to use his best endeavors to take to his own employer the business and trade of the corporation of which he is a director, as appears to be so in this case. The difficulty, as I see it, with this argument, is that the test of his ineligibility is that he is directly interested in the business of the competitor, without specifying that the character of the interest is such as to bring his services to his employer and his duties as director in conflict. In the other cases, where the exclusion was held valid, the very nature of the office held in the rival company condemned the director occupying the dual relation.
The difference is clearly presented in this case. One might be an employe of a rival concern, directly interested in *Page 93 
its prosperity, whose duties are not such as to take from him the power to properly serve the corporation of which he is a director. On the other hand, a situation may arise where a director, being an agent or employe of a rival concern, might do it infinitely more damage than if he were a director of the rival concern. The director of the rival concern might not possess the peculiar knowledge of the trade which would enable him to obtain information and use it against the corporation of which he is a director. That situation seems, in a measure, to appear in this case. Mr. Cusack, in his affidavit, charges that Mr. Costello is a man experienced in the trade; that for a long time he was in the service of the Cusack Company; that he left its employ and became manager of the O.J. Gude Company; that the Cusack Company had been trading with the O.J. Gude Company and other concerns allied with the Gude Company, and that, for the protection of the Cusack Company, it was deemed wise to give up trading with Gude and such other companies. And Mr. Costello, in his affidavit, says as follows: "I state that the reason which has made it necessary for me to give some attention to establishing paint plants of the O.J. Gude Company in competition with the Cusack Company has been for the reason that the Thomas Cusack Company refused to accept or carry out orders for paint display for the O.J. Gude Company," and he, as manager in charge of this particular line of competition, if he serves the Gude Company properly, must use his best endeavors to take the trade of the Cusack Company of which he is a director.
There is a further feature: He charges in the bill that the corporation is insolvent and mismanaged, whereas the bill itself leads to the strong inference that Mr. Costello does not believe it to be insolvent, and a reading of the bill in connection with the affidavits of the defendants makes it appear quite plain that it is far from being insolvent. And it further appears that the attorney of Mr. Costello went to two banks in Chicago, about the 1st of February, 1921, and stated to the representatives of one of the banks that he represented certain minority stockholders of the company; that *Page 94 
he had valuable and confidential information regarding the Thomas Cusack Company; that the earnings of the company were grossly exaggerated; its financial condition was not as it was represented, and, in substance, stated that the business was badly managed and in an unsatisfactory condition, and if the company was indebted to the bank in any sum, he would advise the bank to collect it as soon as possible while there was yet opportunity. And an officer of the other bank swore substantially to the same effect, stating that this attorney said he represented Costello, a minority stockholder; that the company was going broke, and that if the company owed the bank any money he would advise the bank to "get the money while the getting was good." These affidavits of the two bankers are not denied by the said attorney, and he is the only person who could deny the same; from all of which it plainly appears that the complainant, Costello, to say the least, was using his best endeavors to greatly injure the corporation of which he was a director. In such a case, I apprehend there would be as much reason to remove him as there would be to remove a director of a rival concern. But, as before stated, the amendment to remove is too broad, in that it tends to disqualify every employe having a direct or indirect interest in the rival concern, regardless of the nature of his employment.
Since the filing of the bill an order was made admitting one H.H. Buchholtz, Jr., a stockholder, as a party complainant.
I regret that I had not more time to investigate this interesting question, but in view of the fact that an appeal will be taken, I deemed it wise to promptly decide the case so that it may be heard at the next term of our court of last resort.
 I will advise an order in accordance with the foregoing views. *Page 95